AO 91 (Rev. 11/11) Criminal Complaint                                AUSA Jennifer Chang (312) 469-6151

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

v.

DAKOTAH MALATARE

CASE NUMBER: 1:25-cr-00306

**UNDER SEAL**



FILED
6/10/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about April 30, 2025, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 922(o) | knowingly possessed and transferred a machinegun |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

/s/ Jon Molidor
JON MOLIDOR
Special Agent, Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: June 10, 2025

*Judge's signature*

City and state: Chicago, Illinois

GABRIEL A. FUENTES, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, JON MOLIDOR, being duly sworn, state as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). I have been so employed since approximately January 2024.

2. As part of my duties as an ATF Special Agent, I investigate criminal violations of law as they relate to federal firearms offenses, including the unlawful possession of firearms or ammunition by convicted felons, firearms trafficking, violent crime, and narcotics trafficking. I employ investigative tools such as the use of informants and witnesses, surveillance, controlled purchases of firearms and narcotics, firearms traces, and the execution of both search warrants and arrests warrants. I have participated in the execution of multiple federal search warrants related to federal firearms offenses.

3. This affidavit is submitted in support of a criminal complaint alleging that DAKOTAH MALATARE has violated Title 18, United States Code, Section 922(o). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging MALATARE with knowing possession and transfer of a machinegun, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

4. This affidavit is based on my personal knowledge, my training and experience, my review of audio and/or video recorded conversations, law enforcement records, and court documents, as well as information provided to me by other law enforcement agents and other individuals.

I. SUMMARY OF PROBABLE CAUSE

5. In summary, and as set forth in more detail below, on or about April 30, 2025, DAKOTAH MALATORE sold an ATF undercover officer two machinegun conversion devices ("MCD") [1] for $400. MALATORE knew that the MCDs would make a gun automatically shoot multiple rounds, without manual reloading, as evidenced by his statement to UC-1 that the MCDs would make the gun go "brrrr," mimicking the sound of a machinegun.

II. FACTS SUPPORTING PROBABLE CAUSE

6. According to UC-1, in April 2025, UC-1 was monitoring the account belonging to Instagram user "mr.tiponurtongue" (the "Instagram account"). On or about April 22, 2025, UC-1 observed a video posted to the Instagram account's stories that showed two firearms displayed on what appeared to be a bed, one of which appeared to be, based on my training and experience, a Glock pistol with an attached blue MCD.

---

[1] Based on my training and experience, I know that an MCD is a machinegun, as the term is used in the National Firearms Act, 26 U.S.C. § 5845(b), because it converts a firearm into a weapon that will shoot automatically more than one shot, without manual reloading, by a single function of the trigger.

2

7. According to UC-1 and a transcript of UC-1's Instagram messages, on or about April 22, 2025, UC-1 responded to the Instagram account's story with a message that stated, "Neeed."[2] On or about April 23, 2025, the user of the Instagram account responded, "U tryna cop?" and UC-1 replied "Yahh. U gonna hook me up?" The user of the Instagram account stated, "Which one?" and UC-1 responded, "I was talkin bout the buttons but wat ya got?" The user of the Instagram account then confirmed, "We got at buttons. And we got that one switch on the Glock. It's blue."

8. Based on my training and experience, as well as my knowledge of this investigation, when UC-1 and the user of the Instagram account discussed "buttons," they were using coded language to refer to MCDs. Additionally, when the user of the Instagram account referenced a "switch," he/she was referring to a type of MCD that is attached to the rear slide of a Glock pistol.

9. According to UC-1 and a transcript of UC-1's Instagram messages, between on or about April 24, 2025 and on or about April 25, 2025, the user of the Instagram account and UC-1 continued to discuss the purchase, and eventually the user of the Instagram account agreed to sell UC-1 a Glock MCD for $250. The user of

---

[2] This investigation included the use of consensually recorded phone calls and text messages. The summaries of recorded conversations in this affidavit do not include reference to all the topics covered during the conversations. Further, quoted material from the recorded conversations as set out in this affidavit is taken from draft summaries, not final transcripts. The summaries do not include references to all statements made by the speakers on the topics that are described by the speakers. At various points in the Affidavit, I have indicated (sometimes in brackets) my interpretation of words and phrases used in the recorded conversations. My interpretations are based on information received from confidential sources, the contents and context of the recorded conversations, events that took place before and after the conversations, my knowledge of the investigation as a whole, my experience and training, and the experience and training of other law enforcement agents in this investigation.

the Instagram account and UC-1 agreed to meet the following week to complete the sale. On or about April 28, 2025, UC-1 messaged the Instagram account and stated that he/she would be available on April 30, 2025, to meet for the purchase.

10. According to UC-1 and a recording of the call, on April 30, 2025, at approximately 2:36 p.m., UC-1 called the user of the Instagram account via Instagram, and the user of the Instagram account confirmed "you want the button for $250?" The user of the Instagram account told UC-1 that he would message UC-1 the address for the purchase and also told UC-1 that he would be sending his "guy" to conduct the transaction. According to UC-1 and a transcript of UC-1's Instagram messages, shortly after the call the user of the Instagram account sent UC-1 the address 3600 West Belmont.

11. According to UC-1 and an audio-video recording, at approximately 3:23 p.m., UC-1 and a second ATF undercover agent ("UC-2") were driving to the buy location when UC-1 received a call from the user of the Instagram account. The user of the Instagram account told UC-1 that "Rico" would be arriving on foot to conduct the transaction. Shortly thereafter, UC-1 and UC-2 drove into the parking lot of a 7-11 store located at 3600 West Belmont, Chicago, Illinois. A couple of minutes after arriving, UC-1 and UC-2 observed a Hispanic male wearing a black hoodie, later identified as MALATARE as explained below, approach their vehicle on foot and enter the rear passenger side door.

12. According to UC-1 and an audio-video recording, after MALATARE entered the vehicle UC-1 asked if he was "Rico" and MALATARE said no, and told

4

UC-1 his name was "Dakotah." UC-1 then asked what MALATARE had for UC-1 to purchase and MALATARE responded, "you want an AR one or one for the Glock?" and proceeded to retrieve two MCDs from his front sweater pocket. MALATARE first handed UC-1 a plastic AR drop in auto-sear MCD and provided a price of $150. MALATARE then handed UC-1 a metal Glock MCD and said, "this one I want $250." UC-1 then inspected both MCDs and observed that the Glock MD was metal, and the AR drop in auto-sear was plastic. MALATARE explained that the plastic MCD was for "an AR." UC-2 asked if the plastic one would work the same as the metal one, and MALATARE responded "damn near." UC-2 then asked about the functionality of the AR drop in auto-sear and MALATARE replied, "It makes the same thing what a Glock would do with this [referring to the Glock MCD]. It makes the AR go brrrr [mimicked the sound of a machine gun]." Later in the conversation, MALATORE explained that the plastic MCD was a "drop in piece." UC-2 asked if the AR drop in auto-sear could be utilized on "the little AR's," referring to AR-style pistols, and MALATORE confirmed they could be used on the "micro" ARs.

13. Following the April 30, 2025 controlled purchase, ATF searched a Chicago Police Department database and located a booking photograph of an individual named DAKOTAH MALATARE who visually matched the individual who sold UC-1 the two MCDs on April 30, 2025 (and who had the first name given by the seller of the two MCDs). UC-1 compared the individual captured in the video from the April 30, 2025 buy to DAKOTAH MALATARE's driver's license photograph and determined that they are the same individual:

5

 

*Image of individual who sold UC-1 the two MCDs on April 30, 2025 (left); MALATARE's Illinois driver's license photo (right)*

14. Based on the foregoing, there is probable cause to believe that on or about April 30, 2025, in the Northern District of Illinois, DAKOTAH MALATARE unlawfully possessed and transferred machineguns, in violation of Title 18, United State Code, Section 922(o).

FURTHER AFFIANT SAYETH NOT.

/s/ Jon Molidor
JON MOLIDOR
Special Agent, Bureau of Alcohol, Tobacco, Firearms & Explosives

SWORN TO AND AFFIRMED by telephone June 10, 2025.

HONORABLE GABRIEL A. FUENTES
United States Magistrate Judge

6